# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AT&T/Bechtel, : 
                Appellant : 
                    : 
              v. : No. 112 C.D. 2015
                    : Submitted: August 7, 2015
Philadelphia Zoning Board : 
of Adjustment : 
                    : 
              v. : 
                    : 
Linda McAnally, and Ashton : 
Square Civic Association : 

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
               HONORABLE MARY HANNAH LEAVITT, Judge
               HONORABLE ANNE E. COVEY, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE LEAVITT                      FILED: November 17, 2015

        AT&T/Bechtel (AT&T) appeals an order of the Philadelphia County Court of Common Pleas (trial court) that denied AT&T's application for a variance so that it could install a wireless telecommunications facility on property it had leased for that purpose in Northeast Philadelphia. In doing so, the trial court affirmed the decision of the Philadelphia Zoning Board of Adjustment (Zoning Board) that AT&T did not meet either the general hardship requirements that apply to a landowner seeking a variance or the specific requirements for a cellphone tower variance. AT&T contends that the trial court erred because the Zoning Board used the incorrect standard for a variance, ignored the evidence of AT&T's hardship and found, without any supporting evidence, that the variance would be

adverse to the public interest. Discerning no merit to these claims, we affirm the trial court.

AT&T has leased part of a 2.45-acre parcel (Property) located at 2799R Willits Road in the City's L-2 Limited Industrial District. The owner of the Property uses it principally for the operation of a landscaping business, to which end he has erected several buildings and storage trailers. He also stores trucks and equipment on the Property. An 8-foot high fence surrounds most of the Property, which is buffered by landscaping on the sides that face residential properties. In addition, a telecommunications monopole measuring 80 feet in height with four arrays of telecommunications antennas has been erected on the Property, along with accessory equipment sheds. The existing telecommunications monopole with antennas is nonconforming and was authorized by a variance.

To the east of the Property is a Sunoco gasoline service station and an electric utility substation owned by PECO Energy Company. Immediately adjacent to the Property is a retail "strip" or shopping center. The Property also abuts residential properties, and the Northeast Philadelphia Airport is nearby.

In 2005, City Council rezoned the Property from an R-1A Residential to an L-2 Limited Industrial District. Over 80% of the Property is in the L-2 District. On June 26, 2006, the Property owner filed an application, ultimately granted by the Zoning Board, to allow open storage to serve his landscaping business. In 2007, the Zoning Board authorized construction of the monopole on the Property.

In October 2009, AT&T entered into a lease for 700 square feet of the Property. The lease authorized AT&T to build and operate a cellphone tower and provided AT&T with access rights to the leased portion of the Property.

2

Accordingly, on November 18, 2009, AT&T applied to the Philadelphia Department of Licenses and Inspections (Department) for a permit to erect an 80-foot monopole with 12 attached antennas, an equipment cabinet measuring 11.5 feet by 20 feet, and an 8-foot high chain link fence with a 10-foot high gate. AT&T proposed to place the tower at the southwest corner of the Property, at the opposite end of the Property from the existing cellphone tower. The proposed monopole would be located 27 feet from the PECO substation property line and 35 feet from the nearest structure on the PECO property. The monopole would be 71 feet from the nearest residential lot line and 98 feet from the nearest home. AT&T's application stated that it needed the telecommunications facility to close a gap in its existing wireless coverage.

The application also explained that the proposed facility would be unmanned except for once-yearly inspections. The radio frequency emissions from the existing and proposed facilities would be far below maximum levels permitted by the Federal Communications Commission (FCC). The existing monopole on the Property does not have space available at the height AT&T needs for its antennas. Because of the Northeast Philadelphia Airport's proximity, a taller tower cannot be built.

On December 1, 2009, the Department denied AT&T's application for a variance for several reasons. First, the Property already had multiple structures and any additional structure could only be approved by the Zoning Board. Second, the proposed monopole did not meet applicable setback and fall zone requirements for cellphone towers. Third, the proposed monopole did not include the screening and landscaping required for cellphone towers.

AT&T appealed, and on April 13, 2010, the Zoning Board conducted a public hearing. Numerous persons appeared to make known their objections to AT&T's variance application.

AT&T presented evidence that the Property was the best place for a telecommunications tower and did not present a risk of harm to public health, safety, or welfare. It showed that the tower would be no different than radio and television towers, which are expressly permitted and are not subject to fall zone or setback requirements as are telecommunications towers. AT&T contended that its tower would be consistent with the other uses on the Property and uses in the L-2 District. Noting that the variance was dimensional, AT&T argued that its application was governed by a more relaxed standard. AT&T urged that the community would benefit from the improvement to its existing wireless coverage provided by the facility.[1]

The Ashton Square Civic Association opposed the grant of a variance. Its board member, Dennis Ward, testified that the tower would be located too close to homes, businesses, and the existing PECO substation. Both the PECO substation and a house were located in the tower's fall zone. Ward expressed concern that the facility might lead to the area becoming a "tree farm" for cell towers.

Linda McAnally, owner of a home in a nearby residential development, also testified in opposition to the tower. She expressed concern that the tower would negatively impact property values in the area. She reported that a potential buyer of her home requested a $100,000 price reduction after learning of the proposed cellphone tower. That potential buyer, Sam Kataub, also testified,

---

[1] The Philadelphia City Planning Commission did not oppose the variance.

4

explaining that he had backed out of the deal after speaking with neighbors about the facility.

City Councilman Brian O'Neill opposed the proposed facility. He explained that the Property was overused.

On April 12, 2010, Susan Sheahan wrote a letter to the Zoning Board noting that the monopole would be located less than a quarter mile from a new residential development. She opposed the facility as an "overuse of this road for this purpose and a detriment to the surrounding residential area," which would adversely impact the skyline of the new development. Zoning Board Decision, Finding of Fact, ¶28.

On April 13, 2010, then State Representative Dennis O'Brien registered his opposition to the facility. He explained that the proposal would violate "safety drop guidelines" and that there "are both residential and commercial properties located within the drop zone." Notes of Testimony (N.T.) 4/13/10 at 19-20; Zoning Board Decision, Finding of Fact, ¶27.

On April 21, 2010, the Zoning Board denied AT&T's application for a variance. AT&T appealed to the trial court. The trial court remanded the matter for further consideration of AT&T's application under Section 14-1802(6) of the Philadelphia Code,[2] which identifies specific criteria for a cellphone tower variance.[3] On February 11, 2014, without taking additional evidence, the Zoning Board again voted to deny the requested variance.

---

[2] The former zoning code was repealed and a new zoning code became effective on August 22, 2012. Because the application under appeal was considered before the new zoning code became effective, all references to the zoning code are to the former zoning code sections and language.

[3] It states that the Zoning Board must consider all of the following:

    (a)   Evidence of the lack of space on suitable existing towers, buildings or other structures to co-locate the proposed antenna, cells, microcells and the lack of

The Zoning Board held that AT&T's application did not meet the requirements set forth in Section 14-312(2)(b) of the Philadelphia Code. First, the proposed monopole was located within 71 feet of a lot line of a residential unit, in violation of the requirement that it not be within 250 feet of a residential lot line. Second, a fall zone equal to the height of the tower is required, which required AT&T's proposed monopole to be set back 80 feet from the Property's lot line; however, the proposed setback was 27 feet. Third, the proposed facility was not going to be screened by landscaping. In sum, the proposed facility required variances from Section 14-312(2)(b)(.1), (.4), and (.6) of the Philadelphia Code in

---

space on existing tower sites to construct a tower for the proposed antenna within the service area;

(b)    Whether the wireless service provided will be unable to provide wireless services without the tower site;

(c)    Whether the application represents a request for multiple use of a tower or site, or use on a site contiguous to an existing tower site;

(d)    Whether the application contains a report that other potential users of the site and tower have been contacted, and they have no current plans, to the best of their ability to determine, that could be fulfilled by joint use;

(e)    Whether the application shows how the tower or site will be designated or laid out to accommodate future multiple users. Specific design features evaluated shall include but not be limited to height, wind loading, and coaxial cable capacity; and

(f)    Whether the proposed tower is to be located in an area where it would be unobtrusive and would not substantially detract from aesthetic or neighborhood character or property values, due either to location, shape of the tower (such as an imitation pine tree tower) or to the nature of surrounding uses (such as industrial use), or to lack of visibility caused by natural growth, landscaping or other factors.

(g)    Anything in §14-1802 to the contrary notwithstanding, for purposes of wireless service towers only, hardship sufficient for the granting of a variance shall include the effect upon the applicant's ability to provide wireless service.

PHILADELPHIA CODE §14-1802(6).

addition to Section 14-113 of the Philadelphia Code,[4] which prohibits multiple structures on a lot.

The Zoning Board next considered the specific criteria that must be met before a variance will be granted for a cellphone tower. PHILADELPHIA CODE §14-1802(6).[5] These criteria include evidence of lack of space on existing towers, whether the provider will be unable to provide services without the tower site, whether the application represents a request for multiple uses, whether the application contains a report that other potential users have been contacted, whether the application shows how the site will be designated to accommodate future multiple uses, and whether the tower is to be located in an area where it would be unobtrusive and would not substantially detract from aesthetic or neighborhood character or property values. A hardship sufficient for a variance shall include the effect upon the utility's ability to provide services. PHILADELPHIA CODE §14-1802(6)(g).

The Zoning Board concluded that AT&T was not entitled to the requested variances under the specific standards for cellphone tower variances. AT&T's evidence did not establish hardship, *i.e.*, that it would be unable to provide wireless services if the tower were refused. The Zoning Board also concluded that AT&T did not establish that the proposed tower would not adversely affect the public health, safety, or welfare of the surrounding community

---

[4] It states:

> Unless otherwise specified under the provisions of this Title, only one principal structure or use shall be permitted on a lot.

PHILADELPHIA CODE §14-113.

[5] *See* n.3, *supra*, for text of Section 14-1802(6).

7

and specifically cited the fall zone and buffer provisions provided for in the Code.[6] AT&T appealed to the trial court.

Briefs were filed by AT&T, McAnally and the Ashton Square Civic Association. On December 9, 2014, the trial court heard oral argument on the merits of AT&T's land use appeal. No additional evidence was presented.

Argument before the trial court focused on whether AT&T demonstrated the hardship needed for a cellphone tower variance. AT&T argued that its evidence showed that it could not provide seamless service to its customers; this gap in service constituted a hardship. The Association responded that AT&T was able to provide service in the area, just not the level of service that it wished to provide, and that this so-called "gap" did not constitute an inability to provide service. The Association also argued that there was no hardship unique to the Property, that the proposed monopole would adversely affect local property values, and that AT&T sought more than the minimum variance. Because relief had already been granted for the other cellphone tower, any hardship relating to service needs "was satisfied at the time." N.T. 12/9/14 at 41.

On December 24, 2014, the trial court denied AT&T's land use appeal, and AT&T appealed to this Court. On January 28, 2015, the trial court ordered AT&T to file a Concise Statement of Errors Complained of on Appeal pursuant to PA. R.A.P. 1925(b).

In its February 3, 2015, statement, AT&T contends that the trial court erred in affirming the Zoning Board for six reasons. First, the Zoning Board did not explain its reasoning. Second, the Zoning Board erred in not granting a

---

[6] The Zoning Board concluded that the refusal was based solely upon its determination that AT&T did not meet the requirements for a variance in the Code, and not upon any consideration of the environmental or health effects of radio frequency emissions.

8

variance in spite of the service gap in coverage. Third, the Zoning Board erred in concluding that AT&T could provide wireless services without the variance. Fourth, the Zoning Board erred in not finding unnecessary hardship. Fifth, the Zoning Board erred in holding that the variance would result in an adverse effect upon the community. Sixth, the Zoning Board erred in not reviewing its request for a dimensional variance in accordance with *Hertzberg v. Zoning Board of Adjustment*, 721 A.2d 43 (Pa. 1998). On March 27, 2015, the trial court issued a Rule 1925(a) opinion that addressed these six issues.

In its appeal to this Court, AT&T raises three issues. First, it contends that the trial court erred in affirming the Zoning Board's denial of its request for variances because it applied an "incorrect variance standard." AT&T Brief at 5. Second, it contends that the trial court erred in affirming the Zoning Board's denial of its request for variances "where the Zoning Board's failure to find an unnecessary hardship was not supported by substantial evidence." *Id.* Third, the trial court erred in affirming the Zoning Board's denial of AT&T's requested variance because the "Zoning Board's finding of adverse effect was not supported by substantial evidence." *Id.*

The trial court has thoroughly addressed AT&T's issues, and we affirm its order for the reasons set forth in the opinion of the Honorable Nina Wright Padilla in *AT&T/Bechtel v. Zoning Board of Adjustment and City of Philadelphia*, (First Judicial District of Pennsylvania, No. 1173 Civil Div. May Term 2014, March 27, 2015).

 

_____
MARY HANNAH LEAVITT, Judge

Judge Covey concurs in the result only.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

AT&T/Bechtel,                    :
          Appellant    :
                    :
          v.            :  No. 112 C.D. 2015
                    :
Philadelphia Zoning Board        :
of Adjustment                    :
                    :
          v.            :
                    :
Linda McAnally, and Ashton       :
Square Civic Association         :

## **O R D E R**

AND NOW, this 17th day of November, 2015, the order of the Court of Common Pleas of Philadelphia County in the above-captioned matter, dated March 27, 2015, is AFFIRMED for the reasons set forth in the opinion of the Honorable Nina Wright Padilla in *AT&T/Bechtel v. Zoning Board of Adjustment and City of Philadelphia*, (First Judicial District of Pennsylvania, No. 1173 Civil Div. May Term 2014, March 27, 2015).

                                _____

                                MARY HANNAH LEAVITT, Judge